UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER D.,

                                                                                            DECISION AND ORDER

                            Plaintiff,

                                                                                           22-CV-0657DGL

                        v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                            Defendant.
_____

Plaintiff, appearing *pro se*, appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On October 15, 2019, plaintiff filed an application for a period of disability and disability insurance benefits, alleging an inability to work since August 18, 2019. (Dkt. #6 at 16). His application was initially denied. Plaintiff requested a hearing, which was held on March 16, 2021 via teleconference before Administrative Law Judge ("ALJ") Stephen Cordovani. The ALJ issued an unfavorable decision on May 3, 2021 concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #6 at 16-30). That decision became the final decision of the Commissioner when the Appeals Council denied review on July 13, 2021. (Dkt. #6 at 1-4). Plaintiff now appeals.

The plaintiff has requested judgment vacating the ALJ's decision and remanding the matter for further proceedings (Dkt. #11), and the Commissioner has cross moved for judgment dismissing the complaint pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. #13). For the reasons set forth

below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## I.     The ALJ's Decision

Plaintiff was born August 7, 1957, and was 62 years old on the alleged onset date, with a college education and past relevant work as a logistics manager. His treatment records reflect a history of impairments including proximal atrial fibrillation (erratic heart rate), non-rheumatic aortic valve insufficiency (heart valve disease), dilated aortic root, pulmonary sarcoidosis (lumps of inflammatory cells in the lungs), and leukopenia (abnormal reduction in circulating white blood cells), which the ALJ found to be severe impairments not meeting or equaling a listed impairment. (Dkt. #6 at 19).

Plaintiff's medical history also included diagnoses of anxiety disorder, alcohol use disorder, and obsessive-compulsive disorder. In applying the special technique for mental impairments, the ALJ determined that plaintiff has no limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentration, persistence and pace, and a mild limitation in adapting or managing himself. (Dkt. #11 at 20-22). Because plaintiff's mental health limitations were no more than mild in any area, the ALJ found plaintiff's mental health impairments to be non-severe.

Upon review of the record, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, but with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently (in excess of the 10-pound lifting and carrying limitation for sedentary work). Plaintiff can stand and walk for up to two hours in a workday, can frequently stoop, and can occasionally kneel, crouch, or crawl. He cannot be exposed to extreme heat, cold, wetness, humidity, noise, vibration, or workplace hazards such as unprotected heights and moving mechanical parts. Finally, he must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. (Dkt. #6 at 24).

When presented with this RFC at the hearing, vocational expert ("VE") Frank A. Linder testified that a person with this RFC – characterized by the ALJ in his hypothetical question as a limited range of light, rather than sedentary, work – could perform plaintiff's past relevant work as a logistics manager. (Dkt. #6 at 29-30). The ALJ thus found plaintiff not disabled.

**II.    The ALJ's Step Two Analysis**

At Step Two of his analysis, the ALJ discussed plaintiff's diagnoses of anxiety disorder, alcohol use disorder, and obsessive-compulsive disorder, but found them to be non-severe impairments.

A "severe" impairment is defined as, "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 CFR §404.1520(c), and which meets the 12-month durational requirement. *See* 42 USC §423(d)(1)(A). Notwithstanding this verbiage, the Step Two evidentiary requirement is *de minimis*, and intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Thus, a Step Two finding of non-severity is only appropriate in cases where "the medical evidence establishes only a slight abnormality . . . which would have no more

3

than a minimal effect on an individual's ability to perform basic work activities." SSR 85-28, 1985 SSR LEXIS 19 (1985).

Furthermore, regardless of whether an impairment is found to be severe, the ALJ is ultimately required to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish disability. *Melendez v. Commissioner*, 2020 U.S. Dist. LEXIS 131543 at *8 (W.D.N.Y. 2020)(citing 20 CFR §§404.2534(c), 416.923(c)).

On review, I find that the ALJ erred in his assessment of plaintiff's mental impairments by reaching a conclusion that was not supported by substantial evidence, and formulated an RFC which failed to account for plaintiff's nonexertional limitations.

The record contained no medical opinions from treating sources, and just two medical opinions by examining sources, with respect to plaintiff's mental impairments. On January 28, 2020, plaintiff was examined by consulting psychologist Dr. Janine Ippolito. Dr. Ippolito found that plaintiff's affect was agitated, and objective testing showed impairment in remote memory skills. Dr. Ippolito opined that plaintiff had mild limitations in attention and concentration, and moderate limitations in sustaining an ordinary routine and attendance, regulating emotions, controlling behavior, and awareness and avoidance of hazards. (Dkt. #6 at 820-23).

Plaintiff underwent a consultative psychiatric examination on June 30, 2021, with Dr. Dennis Noia. Dr. Noia observed "fair to poor" insight and judgment, and concluded that plaintiff would have, among other things, moderate to marked limitations in regulating emotions, controlling behavior, and maintaining well-being, secondary to psychiatric symptoms and alcohol use. (Dkt. #6 at 859-63).

The ALJ found Dr. Ippolito's and Dr. Noia's opinions to be of "little" persuasive value (Dkt. #6 at 20-21), instead deferring to the opinions of two state agency reviewers. Those reviewers determined, based upon their reading of the record and their observations that plaintiff had not undergone regular mental health treatment during the relevant period, that plaintiff's psychiatric impairments were no more than mild. (Dkt. #6 at 21).

Initially, I find that the ALJ's determination that plaintiff's mental health impairments were non-severe was not supported by substantial evidence, and was based on legal error. The primary explanation given by the ALJ for discounting Dr. Ippolito's and Dr. Noia's opinions was that they appeared to rely overmuch on plaintiff's subjective complaints. This was error: there was nothing in either opinion to support the ALJ's conclusion that the limitations they specified were derived solely from plaintiff's self-reported symptoms, rather than upon the physicians' own examination findings (e.g., agitated affect, poor insight and judgment) and objective testing (e.g., ability to recall only 1 out of 3 memory cues).

Furthermore, it was error for the ALJ to reject the opinions of psychological and psychiatric consultants simply "because [they were] based on a patient's self-reports, because all psychological assessments are based on a patient's subjective statements and their behavior during the exam." *Matta v. Saul*, 2020 U.S. Dist. LEXIS 94232 at *12-*1 (W.D.N.Y. 2020). It is well-settled that an ALJ's "expectation that a psychological opinion be formed only after diagnostic testing is unrealistic. A medical diagnosis will often be informed by the patient's subjective description of his or her symptoms. That is all the more true in cases involving mental health, which tend to be less susceptible to objective testing and assessment." *Stacey v. Commissioner of SSA*, 799 Fed. App'x 7, 9 (2d Cir. 2020).

Additionally, the ALJ's characterization of Dr. Ippolito's opinion as indicating that plaintiff's symptoms were "not severe" for purposes of the Step Two analysis, because Dr. Ippolito had stated that plaintiff's symptoms were not "significant enough to interfere with [his] ability to function on a daily basis," relied on an improper standard. (Dkt. #6 at 822). Regardless of the forceful regulatory verbiage that defines a "severe impairment," "[a] claim may be denied at [S]tep [T]wo only if the evidence shows that the individual's impairments . . . do not have *more than a minimal effect* on the person's physical or mental abilit[ies]." *Schafenberg v. Saul*, F. App'x 455, 456 (2d Cir. 2021)(emphasis added)(quoting SSR 85-27 at *3(1985)). As such, that standard is generally satisfied where, for example, unrebutted medical opinions identify moderate or greater limitations. *See Schafenberg*, F. App'x 455 at 457. Because plaintiff presented such evidence, and because the ALJ failed to set forth plausible reasons for rejecting it, the ALJ's conclusion that plaintiff's mental health impairments were non-severe was not adequately supported.

Moreover, even assuming *arguendo* that the ALJ had properly concluded that plaintiff's mental impairments were non-severe, remand would nonetheless be appropriate, for the purpose of redetermining plaintiff's RFC in a manner that takes his mental health limitations into account. While the ALJ recited boilerplate language at Step Two, indicating that he had "considered the limiting effect of all the claimant's severe and non-severe impairments" in making his RFC finding (Dkt. #6 at 23), there is no indication that he actually did so. *See Parker-Grose v. Astrue*, 462 Fed. App'x 16 (2nd Cir. 2012); 20 CFR §404.1545(a)(2). Indeed, despite finding that plaintiff was at least mildly impaired in three of the four categories that comprise the special technique, the ALJ did not include any nonexertional limitations in his RFC determination other than the avoidance of certain workplace hazards.

Finally, the ALJ erred in finding that plaintiff was capable of returning to his past relevant work as a logistics manager, a skilled position with a specific vocational preparation ("SVP") level of 8, despite finding a number of mild mental limitations. "Adequate consideration of a plaintiff's non-severe mental impairments becomes particularly important where the disability determination turns upon [his or] her ability to perform skilled or highly skilled work," and the ALJ's failure to engage in such consideration here constitutes reversible error. *Coulter v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 82064 at *28-*29 (S.D.N.Y. 2023)(collecting cases, and finding that ALJ erred in concluding that plaintiff could return to highly skilled resident supervisor position, without addressing the impact of plaintiff's non-severe mental impairments on her RFC). *See also Novas v. Kijakazi*, 2023 U.S. Dist. LEXIS 40105 at *31 (S.D.N.Y. 2023) (ALJ erred in formulating an RFC without considering the effect of non-severe impairments on plaintiff's ability to perform skilled past work, because "[i]n the world of work, losses of intellectual and emotional capabilities are generally more serious when the job is complex"); *Wagner v. Commissioner*, 2020 U.S. Dist. LEXIS 64398 at *12 (W.D.N.Y. 2020) (even semiskilled work "may be inconsistent with mild limitations in mental functioning").

For these reasons, remand is necessary, both to reconsider the severity of plaintiff's mental impairments at Step Two, and to ensure that the resulting decision documents the ALJ's consideration of whether and to what extent those limitations – regardless of severity – impact plaintiff's RFC. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles"); *Rogers v. Berryhill*, 2017 U.S. Dist. LEXIS 129517 at *9-*10

(W.D.N.Y. 2017)(remand is required where "although the ALJ's step two conclusion contained a boilerplate statement that he considered [claimant's] nonsevere impairments when creating the RFC . . . his RFC analysis does not discuss [claimant's] depression or explain why the RFC lacked any related mental limitations," making it "impossible for . . . the Court to know whether the ALJ considered her depression when he determined her RFC").

Because I find that remand is necessary for the ALJ to redetermine plaintiff's claim beginning at Step Two, I decline to reach plaintiff's additional arguments, relating to subsequent steps of the analysis.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #11) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is denied.

This matter is remanded for further proceedings consistent with this opinion, including reassessment of plaintiff's impairments beginning at Step Two, a detailed analysis of whether and to what extent plaintiff's severe *and* non-severe impairments limit his ability to perform work-related functions, a fresh redetermination of plaintiff's RFC, and the issuance of a new decision.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 12, 2023.